UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
TOWN OF OYSTER BAY,

                            Plaintiff,

      -against-

ILLINOIS NATIONAL INSURANCE COMPANY,

                            Defendant.
--------------------------------------------------------------X

Docket No.:  19-cv-4150

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, TOWN OF OYSTER BAY ("Oyster Bay"), by its attorneys MIRANDA SLONE SKLARIN VERVENIOTIS LLP, as and for its Complaint herein, alleges as follows:

## PARTIES

1.      At all relevant times, Oyster Bay is a Town located in Nassau County, New York, with a municipal address of 54 Audrey Avenue, Oyster Bay, New York 11771.

2.      At all relevant times, ILLINOIS NATIONAL INSURANCE COMPANY ("Illinois") was and still is a foreign corporation duly organized and existing under and by virtue of the laws of the State of Illinois, with its principal place of business in Illinois.

3.      Illinois was and is authorized to issue policies of insurance in the State of New York.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction due to diversity of citizenship and an amount in controversy in excess of the jurisdictional limits of $75,000, exclusive of interest and costs, pursuant to 28 U.S.C. § 1332.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that the claim arose in this District.

1

6.    A controversy exists between the parties regarding the extent of coverage afforded under the policy of insurance issued by Illinois to Oyster Bay.

7.    Circumstances exist that justify the determination by this Court, pursuant to 28 U.S.C. § 2201, of the rights and obligations of the parties as to the provisions of the aforesaid policy(ies) of insurance.

8.    Oyster Bay has no adequate remedy at law.

## BACKGROUND

9.    Illinois issued a Public Officials and Employment Related Practices Liability Policy to Oyster Bay under Policy Number 01-499-97-23 for the policy period of January 28, 2009 to January 28, 2010 (the "Illinois National Policy").

10.    The policy contained limits of liability in the amount of $10,000,000 that were never changed by an endorsement applicable to the fee award at issue.

11.    On or about May 18, 2010, Centro De La Comunidad Hispana De Locust Valley and The Workplace Project (referred to collectively as "Centro") commenced a lawsuit in the United States Court for the Eastern District of New York, captioned *Centro De La Comunidad Hispana De Locust Valley; and The Workplace Project v. Town of Oyster Bay; John Venditto, Town Supervisor of the Town of Oyster Bay*, which was assigned docket number 2:10-cv-02262-DRH-AYS (the "Underlying Action").  **See ECF Doc. No. 1**.

12.    In the Underlying Action, Centro alleged that the enactment of Oyster Bay Town Code Ordinance 205.32 (the "Ordinance"), which prohibited the solicitation of employment or employees on public streets, impermissibly discriminated against Hispanic day workers in violation of the First and Fourteenth Amendments to the United States Constitution, and sought to enjoin the Ordinance.

2

13.     Thereafter, on September 29, 2011, Centro filed an Amended Complaint in the Underlying Action. The Amended Complaint is annexed hereto as **Exhibit "A**.**"**; see also **ECF No. 40**.

14.     That Centro also sought to recover attorneys' fees and expenses in connection with litigating the action in both the original and amended complaints.

15.     On or about December 1, 2014, Centro filed a motion for summary judgment in the Underlying Action to permanently enjoin the Ordinance from going into effect because it unconstitutionally violated the First and Fourteenth Amendments of the U.S. Constitution.

16.     On or about September 3, 2015, Judge Hurley of this Court issued a Memorandum and Order granting Centro's motion for summary judgment holding that the Ordinance violated the First Amendment.

17.     On or about September 15, 2015, Oyster Bay filed a Notice of Appeal with respect to Judge Hurley's decision on Plaintiff's motion for summary judgment.

18.     On or about August 22, 2017, the United States Court of Appeals for the Second Circuit affirmed Judge Hurley's Memorandum and Order dated September 3, 2015, in a Mandate filed on September 15, 2017.

19.     On or about October 16, 2017, Centro filed a motion for attorneys' fees and costs seeking the monetary sum of $1,533,923, which was referred to Magistrate Shields for a Report and Recommendation.

20.     On June 18, 2019, Magistrate Judge Shields issued a report recommending that Centro be given a total monetary award of $1,505,806.

21.     On July 3, 2019, Judge Hurley entered an order adopting Magistrate Shields' Report and Recommendation regarding the monetary judgment to be awarded.

22.     On July 8, 2019, a Judgment was entered in this Court providing Plaintiffs with a "total monetary award" of $1,505,806.

### NOTICE TO ILLINOIS

23.     Illinois was first notified of the Centro claim in May 2010.

24.     By letter dated June 7, 2010, Illinois informed Oyster Bay that it would provide coverage for the Underlying Action, subject to a reservation of rights. The June 7, 2010 letter is annexed hereto as **Exhibit "B."**

25.     Illinois expressly advised Oyster Bay that its policy provided limits of liability of $10,000,000 for the Underlying Action.

26.     In its June 7, 2010 letter, Illinois cited numerous policy exclusions, but did not cite any exclusionary provisions limiting coverage or policy limits for the attorneys' fees clearly sought by the plaintiffs in the Underlying Action.

27.     Illinois then undertook the defense of Oyster Bay in 2010 and answered the Complaint, and controlled the defense pursuant to its duty to defend.

28.     That Illinois has continued this defense to date without interruption.

29.     That it has received continuing progress reports from the outset of its assumption of the defense to date.

30.     That it has paid defense costs for the Underlying Action since it assumed the duty to defend in 2010.

31.     That despite the foregoing, Illinois, by letter dated January 16, 2018, informed Oyster Bay for the first time that coverage for the attorneys' fees sought by the plaintiffs in the Underlying Action was limited to $100,000 based upon policy exclusion 5(b). The January 16, 2018 letter is annexed hereto as **Exhibit "C."**

32.    By e-mail dated March 6, 2018, Oyster Bay objected to Illinois' January 16, 2018 new position. See **Exhibit "D**."

### ILLINOIS NATIONAL POLICY

33.    The Declarations page of the Illinois National Policy provides the following:

### DECLARATIONS

ITEM 3. LIMIT OF LIABILITY   $10,000,000

ITEM 4. (a) DEDUCTIBLE:  $25,000          Each Wrongful Act other than an
                                          Employment Practices Violation

          *******

ITEM 5. PREMIUM: $71,000

34.    That the first sentence of the Illinois National Policy states the insurance afforded by the policy is provided:

> In consideration of the premium charged, and in reliance upon the statements in the Application attached hereto and made a part hereof, and subject to the Limit of Liability stated in Item 3 of the Declarations and the terms and conditions contained herein, the Company and the insurer agree as follows.

35.    The insuring agreement of the Illinois National Policy issued to Oyster Bay provides as follows:

### 1.  INSURING AGREEMENTS

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay <u>as Damages</u> resulting from any Claim first made against the Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Company pursuant to the terms of this policy for any Wrongful Act of the Insured in the performance of duties for the Public Entity.
> [Emphasis supplied].

36.    The Illinois National Policy contains the following definitions:

> (b) "Claim" means a judicial proceeding alleging a Wrongful Act that is filed against an Insured in a court of law or equity and which seeks

Damages or other relief. Claim shall also mean an administrative proceeding alleging a Wrongful Act provided an enforceable award of Damages can be made against an Insured at the admininistrative proceeding.

(c) "Damages" means a monetary judgment or settlement agreed to with the consent of the Company.

(e) "Employment Practice Violation(s)" means any actual or alleged:

(3) discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability;

(j) "Wrongful Act" means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or Employment Practices Violation by an Insured solely in the performacne of duties for the Public Entity.

37.    The Illinois National Policy further provides:

**DEFENSE PROVISIONS**

(a) The Company shall, <u>in addition to the Limit of Liability</u>, appoint an attorney and defend any Claim against the Insured alleging a Wrongful act, even if such Claim is groundless, false or fraudulent; and pay on behalf of the Insured Defense Costs.
[Emphasis supplied].

38.    The Illinois National Policy also contains the following exclusionary provision,

which they belatedly raised in 2018--Eight (8) years after suit was filed seeking attorney's fees:

**5.    EXCLUSIONS**

This policy does not apply to any damages or claim:

(b) seeking relief or redress in any form other than damages, or attorney's fees, costs or expenses which the insured shall become obligated to pay as a result of an adverse judgment or settlement for a claim seeking such relief; however, the company <u>shall defend</u> such a claim in accordance with clause 2, subject to a Policy Period aggregate <u>limit of $100,000</u>. This limit shall be part of the limit of liability stated in Item 3 of the Declarations.
[Emphasis supplied].

6

39.    The Illinois National Policy also provides:

NEW YORK AMENDATORY ENDORSEMENT
DEDUCTIBLE NOT APPLICABLE TO LEGAL DEFENSE COSTS
LIMIT OF LIABILITY NOT REDUCED BY LEGAL DEFENSE COSTS

In consideration of the premium charged, it is hereby understood and agreed that Legal Defense Costs shall not be subject to the deductible of this policy.

It is further understood and agreed that Legal Defense costs shall not operate to reduce the limit of liability.

\*\*\*\*\*\*\*\*

40.    That Illinois National did provide for additional limits of liability in <u>Endorsement 9,</u> where it provided a new sub-limit for the provision of coverage. This is in contrast to their current attempt to do so by an exclusion--as in the aforementioned <u>Exclusion 5(b)</u>.

## AS AND FOR A FIRST CAUSE OF ACTION

41.    That Oyster Bay repeats and reiterates each and every allegation contained in paragraphs "1" to "40," as though more fully set forth herein.

42.    That the exclusion in the Illinois National Policy is ambiguous as drafted, and therefore unenforceable and must be construed in favor of Oyster Bay to provide insurance coverage for any attorneys' fees awarded to the plaintiffs in the Underlying Action up to the full policy limit of $10,000,000 for which Oyster Bay paid a substantial premium.

43.    The exclusion states: This policy does not apply to any damages or claim:

(b)    seeking relief or redress in any form other than damages, or attorney's fees, costs or expenses which the insured shall become obligated to pay as a result of an adverse judgment or settlement <u>for a claim seeking such relief;</u> however, the company <u>shall defend</u> such a claim in accordance with clause 2, subject to a Policy Period aggregate <u>limit of $100,000</u>. This limit shall be <u>part of the limit of liability stated in Item 3 of the Declarations.</u>
[Emphasis supplied].

44.     The policy provision is ambiguous because it attempts to exclude coverage for claims that do not seek damages and apparently also exclude attorneys' fees, yet within the same "exclusion" purporting to eliminate coverage, Illinois indicates it will defend such a claim up to $100,000.

45.     The policy provision is initially ambiguous as phrased, because the provision can be construed to exclude not only suits seeking non-monetary relief from coverage, but also any claim for attorneys' fees, regardless of whether monetary or non-monetary relief is sought.

46.     That the conjunction ,"or," when placed between 2 ambiguous descriptions of 1) relief in any form but damages, and 2) attorney's fees for which an insured may become obligated to pay for a claim seeking such relief is hopelessly internally inconsistent and ambiguous.

47.     That this ambiguity is compounded by the misplaced modifier of "for a claim seeking such relief".  Is that to modify the aforementioned confusing relief in any form other than damages clause *or* the attorney's fees claim clause?  After all, both are claims set forth in litigation against public officials.

48.     That such an exclusion, if enforced, would indeed be illusory and against public policy in a policy purporting to provide Public officials with liability coverage against claims arising under 42 U.S.C. § 1983 and its related fee-shifting provision, 42 U.S.C. § 1988.

49.     That the Illinois National Policy clearly covered the type of claims at issue in the Underlying Action as triggered by the broadly defined term "Wrongful Act," defined as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or Employment Practices Violation by an Insured solely in the performance of duties for the Public Entity".

50.     As such, any lack of coverage for attorney's fees in a Public Officials policy in New

York providing coverage for any error or omission by a public official would be illusory, i.e. not provide the basic protection needed for a municipal "protection" policy.

51.     Nor does the exclusion's enforcement by Illinois make sense at bar in that they:

     a.  Did defend for 8 years--without reference to the subject exclusion--the constitutional claims which did not seek damages

     b.  Did defend for 8 years--without reference to the subject exclusion--the claim for attorney's fees.

52.     That the exclusion further contradicts other terms in the policy, including but not limited to the following:

53.     That the attempt to provide $100,000 in defense costs for attorney's fee claims contradicts endorsement 3's clear proviso that defense costs cannot reduce the limit of liability, and also contradicts the Defense costs provision's statement set forth above (2a) that defense costs shall be "in addition" to the limit of liability.

54.     That the attempt to reduce the available $10,000,000 in indemnity limits to $100,000 in an exclusion purporting to entirely exclude such fees is not only ambiguous, but contradicts the policy's explicit foundational requirement that "In consideration of the premium charged, and in reliance upon the statements in the Application attached hereto and made a part hereof, and subject to the Limit of Liability stated in Item 3 of the Declarations [$10,000,000] and the terms and conditions contained herein, the Company and the Insured agree as follows": …[thereafter going on to explain the wrongful act coverage provided and explained above].

55.     That a substantial premium of $71,000 was paid in consideration for the $10,000,000 in policy limits provided.

56.     That the exclusion's reference to making the $100,000 aggregate limit "part of" the

9

Declaration's provision of $10,000,000 in limits also is incongruous and tortured. How can two (2) supposedly separate limits be a part of each other? Either Illinois provided $10,000,000 in limits or nothing.

57. That to the extent Illinois sought such a limitation, it should have been clearly referenced on the Declarations page of the Illinois National Policy and the premium reduced, rather than being subsumed in a contradictory, confusing exclusion from coverage.

58. That furthermore, if Illinois wanted to reduce the limits of liability, at a minimum, it was required to do so by a bargained-for policy endorsement clearly explaining the dramatic reduction rather than in an exclusion.

59. That in fact, in endorsement 9 to the subject policy, Illinois does just that in providing additional limits of coverage for certain specific claims.

60. Additionally, the purported limited coverage for attorney's fees belies the $71,000 in premium Oyster Bay paid Illinois.

61. That by virtue of the foregoing, this ambiguous exclusion must be construed against the drafter Illinois and must be enforced in favor of Oyster Bay in accord with well-established law.

62. That, assuming *arguendo*, that the exclusion could be enforced, it would have to be construed and enforced in favor of Oyster Bay.

63. That the policy defines the term damages as follows: "Damages" means a monetary judgment ....

64. That the July 8th judgment references not once, but twice that the judgment is for a "monetary award " of $1,505,806.

65. That the subject exclusion 5(b) does not purport to exclude damages, as defined in

Illinois' own policy

66.     That the policy thus provides coverage for damages and Illinois has now become "legally obligated to pay damages" (as set forth on page 1 of its policy) for the monetary judgment of $1,505,806 entered on July 8, 2019.

67.     Based on the foregoing, Oyster Bay is entitled to a Declaration that the Illinois Exclusion 5(b) relied upon to reduce coverage for the plaintiffs' attorneys' fees in the Underlying Action to $100,000 is ambiguous, illusory and void as a matter of law, and that Illinois has a duty to indemnify Oyster Bay for the monetary judgment of $1,505,806 awarded to the plaintiffs in the Underlying Action pursuant to the policy limit of $10,000,000.

## AS AND FOR A SECOND CAUSE OF ACTION

68.     Illinois waived and is estopped from now asserting the claimed exclusionary provision to reduce coverage for any attorneys' fees awarded against Oyster Bay because Illinois did not assert this provision for eight (8) years.

69.     When Illinois issued its June 7, 2010 reservation after receiving notice of the claim, it was in possession of the Underlying Action's Complaint, which sought attorney's fees.

70.     When Illinois issued its 2010 letter, it thus knew that Centro was pursuing a claim for attorneys' fees and costs.

71.     That despite the foregoing, it did not raise the subject exclusion 5(b) that it now seeks to utilize.

72.     That by its defense without relevant reservation concerning the purported drastic reduction in limits for 8 years, Illinois instead lulled and led Oyster Bay into believing that there was $10 million in limits, as it had paid for in premiums.

73.     That Oyster Bay has been prejudiced by Illinois' bad faith failure to advise it of a

claimed change in limits until nine (9) years after the policy was issued, and eight (8) years after it undertook the defense of Oyster Bay in the Underlying Action seeking attorney's fees; and

74.     That by virtue of the foregoing, Illinois should be deemed to have a.) waived any reliance on said exclusion, and b.) to be equitably estopped from now relying on same.

**WHEREFORE**, Oyster Bay demands judgment:

(1) Declaring that the exclusionary provision of the Illinois National Policy 5(b) relied upon by Defendant to reduce coverage for the attorneys' fees sought by the plaintiffs in the Underlying Action to $100,000 is ambiguous as a matter of law;

(2) Declaring that Illinois has a.) waived any argument that its exclusion 5(b) creates new limits of $100,000 rather than the $10,000,000 in contractually provided policy limits and b.) is equitably estopped from relying upon said Exclusion 5(b) to limit its contractually provided $10,000,000 in policy limits.

(3) Declaring that that Illinois National has a duty to indemnify Oyster Bay up to the full policy limits of $10,000,000 for the $1,505,806 monetary judgment awarded against Oyster Bay in the Underlying Action;

(4) Ordering that Illinois National tender $1,505,806,with interest, to satisfy the $1,505,806 monetary judgment awarded against Oyster Bay in the Underlying Action;

(5) Awarding Oyster Bay costs, disbursements and attorneys' fees incurred in connection with this action.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule Civil Procedure 38, Plaintiff demands a trial by jury.

Dated:  July 17, 2019

**MIRANDA SLONE SKLARIN
VERVENIOTIS LLP**
Attorneys for Plaintiff
TOWN OF OYSTER BAY

_____
Michael A. Miranda
The Esposito Building
240 Mineola Boulevard
Mineola, New York 11501
(516) 741-7676

13